# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA K. GREEN, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-07-245-RAW-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|        Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Amanda K. Green requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries:  first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence means "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court may not re-weigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born on March 23, 1970, and was thirty-five years old at the time of the administrative hearing. She has a high school education and previously worked as a receptionist. She alleges disability since January 3, 2003, because of undifferentiated connective tissue disease ("UCTD") with seronegative polyarthritis, systemic lupus erythematosus, autoimmune hepatitis, rheumatoid arthritis, heart palpitations, headaches, anxiety, and depression.

**Procedural History**

On September 21, 2004, the claimant filed her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, which was denied. The claimant maintained insured status through September 30, 2003. ALJ Lantz McClain conducted a hearing and found the claimant was not disabled on September 25, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, she could lift up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 19). The ALJ concluded that the claimant could return to her past relevant work as a receptionist (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the opinions of her treating physician Dr. Katrina A. Joslin, M.D.; (ii) by making an RFC determination that was not supported by substantial evidence; and, (iii) by failing to discuss significantly probative evidence which conflicted with his findings. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The record reveals that the claimant began suffering from joint pain and swelling in January 2003. She received treatment from the Eufaula PHS Indian Health Center from that time through March 2005 (Tr. 190-284). Dr. Joslin, a board certified rheumatologist, began treating the claimant in February 2004. The claimant complained of joint pain in her hands and wrist with decreased grip on the right and swelling of the distal forearms and lateral ankles and feet. She reported low-grade fevers with overactivity, problems sleeping, headaches, and a rash covering her arms, face, legs and feet. Upon examination, the claimant's joints had a full range of motion, but Dr. Joslin noted "fullness or swelling of the distal forearms, in lateral ankles and feet consistent with edema." She also indicated the claimant's lab results showed a negative rheumatoid factor, negative ANA, normal thyroid function test, high cholesterol, C-reactive protein of 24.2, and a normal urinalysis. She provided the claimant with samples of Ultracet and ordered additional labs (Tr. 135-36). When the claimant returned in March 2004, she reported continued swelling in her feet and problems wearing shoes because of it. Dr. Joslin described her wrists and ankles as "puffy" and assessed the claimant with features of inflammatory process (Tr. 134). At her next

appointment in a couple of weeks, Dr. Joslin assessed the claimant with autoimmune hepatitis, fatigue, fevers and rashes and provided the claimant with a pamphlet about lupus (Tr. 133). By May 2004, the claimant described herself as "miserable." Dr. Joslin noted the claimant's wrists, forearms, and ankles continued to be "puffy" and she also complained of headaches (Tr. 132). In September 2004, the claimant complained of palpitations and a fluttering sensation over four days and continued to suffer from chronic joint pain and leg swelling. An EKG showed no acute findings (Tr. 128). When the claimant returned in October 2004, she complained of fatigue, headaches and ankle swelling. She indicated the swelling increased the longer she was on her feet. Dr. Joslin assessed the claimant with UCTD (Tr. 165). In February 2005, the claimant felt worse and her hands had started going numb. She had increased stiffness and pain and continued to have swelling in her arms and ankles, but she had a full range of motion in her joints (Tr. 335). Dr. Joslin assessed the claimant with UCTD and noted seronegative rheumatism in April 2005. The claimant's rashes and headaches had improved somewhat on medication but her sleep remained poor (Tr. 336). The claimant reported some relief in June 2005, and Dr. Joslin assessed her with seronegative arthritis (Tr. 338).

At her visit in September 2005, the claimant complained of right arm weakness, right-sided headaches, and her right fourth and fifth fingers feeling "floppy." She also suffered from right shoulder pain which had decreased elevation of her right arm but Tinel's sign was negative in the wrist and elbow even though there was some swelling in the wrist (Tr. 340). At that time, Dr. Joslin completed a Residual Functional Questionnaire for the claimant

based on her diagnoses of UCTD with seronegative polyarthritis combined with systemic lupus erythematosus. She indicated the claimant met the American Rheumatological criteria for lupus and also suffered from increased C-reactive protein, rashes, autoimmune hepatitis and arthritis. Dr. Joslin judged the claimant's prognosis as "chronic" with a "poor expectation of change" and indicated her impairments had lasted or were expected to last at least twelve months and were in existence prior to September 30, 2003, the date the claimant's insured status expired. The claimant's symptoms were described as nonrestorative sleep, chronic fatigue, morning stiffness, subjective swelling, numbness and tingling, weakness, anxiety, depression, and frequent severe headaches, and she experienced pain described by Dr. Joslin as "chronic, severe" in both shoulders, legs, knees, ankles, and feet and the right arm, hands, and fingers. The pain was precipitated by movement and overuse, was sufficiently severe to interfere with attention and concentration on a frequent basis, and resulted in a severe limitation in the claimant's ability to deal with work stress. Dr. Joslin did not believe the claimant was a malingerer, and she judged her to be "very severely limited" in a competitive work situation. She determined the claimant could walk less than one city block; sit, stand, or walk less than two hours continually; lift/carry ten pounds and less occasionally; and never lift/carry twenty or fifty pounds. The claimant needed to lie down with her headaches and had significant limitations in reaching, handling, and fingering. She could frequently bend and twist at the waist but her impairments and treatment would cause her to be absent from work more than three times per month (Tr. 286-90). In October 2005, the claimant's symptoms remained mostly unchanged and she was

assessed with lupus features (flaring), autoimmune hepatitis, fevers, headaches, and increased fatigue (Tr. 341). The claimant continued to suffer from mild swelling in her hands, forearm, and feet in March 2006 (Tr. 343), she complained of knee pain in May 2006 (Tr. 344), and could not walk by June 2006 (Tr. 345).

The ALJ mentioned Dr. Joslin's findings on the RFC Questionnaire in the decision and rejected them because: (i) Dr. Joslin "did not state that the claimant was disabled and could not perform any work[;]" and, (ii) "Dr. Joslin indicated new diagnosis [*sic*] which she provides no explanation and shows no medical findings to support her diagnoses." (Tr. 21). However, the ALJ's evaluation of the opinion evidence from Dr. Joslin was deficient for several reasons.

First, it was error for the ALJ to reject Dr. Joslin's opinions because she did not find the claimant disabled or unable to work. Questions of whether the claimant is disabled or unable to work are issues reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), (2) (noting that opinions that claimant is disabled or that an impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."), and "[i]t therefore would be inconsistent with the regulations to require the doctor to state such a conclusion." *Bibbs v. Apfel*, 3 Fed. Appx. 759, 762 (10th Cir. 2001) [unpublished opinion]; *see also id*. ("[T]he fact

that none of the doctors may have stated directly that claimant is permanently disabled is legally irrelevant.").

Second, the ALJ failed to fully consider the opinions rendered by Dr. Joslin. He mentioned some of Dr. Joslin's restrictions, *e. g.*, the claimant could sit, stand, and walk less than two hours, lift and carry ten pounds or less occasionally, and frequently twist and bend, but he failed to discuss several others, *e. g.*, the claimant's pain would frequently interfere with concentration and severely limit her ability to deal with work stress, the claimant would need to lie down during the workday because of headaches, the claimant had significant limitations in reaching, handling and fingering, and she would likely miss work three times or more a month because of her impairments. It was error for the ALJ to "pick and choose" between Dr. Joslin's findings without any explanation. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Instead, the ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See*, *e. g.*, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th

Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

Finally, the ALJ's determination that Dr. Joslin did not explain new diagnoses and that the medical records did not support them does not constitute an appropriate treating physician analysis. The ALJ was required to determine whether Dr. Joslin's opinions were entitled to controlling weight, *i. e.*, if the opinions were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [*and*] consistent with other substantial evidence in the record[,]'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) [emphasis added], *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), but the ALJ appears to have addressed only the first part of the controlling weight analysis. However, even if the opinions were not entitled to controlling weight, the ALJ still was to determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention

which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ failed to specifically address any of these factors.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of Dr. Joslin's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 24th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**